**Opinion filed December 7, 2023**



## In The

# Eleventh Court of Appeals

_____

### No. 11-22-00234-CR

_____

### RICARDO OLIVA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR55426**

### M E M O R A N D U M   O P I N I O N

Appellant, Ricardo Oliva, was indicted for the third-degree felony offense of harassment of a public servant. *See* TEX. PENAL CODE ANN. §§ 22.11(a)(3), (b) (West 2019). Appellant subsequently filed a motion to suppress all evidence relating to his detention and arrest, wherein he contended that (1) the City of Midland Police Department violated his rights under the United States Constitution, the Texas constitution, and Article 38.23 of the Texas Code of Criminal Procedure, and (2) he

was "arrested and/or detained" without a warrant, probable cause, or other lawful authority. At the pretrial hearing on the motion, Appellant argued that his "detention [was] constitutionally invalid" because law enforcement officers did not have probable cause to initially arrest him for public intoxication—an offense that he committed prior to committing the harassment offense. The trial court denied Appellant's motion. Appellant later pleaded guilty to the indicted offense and elected to have the trial court assess his punishment. Following a punishment trial, the trial court sentenced Appellant to five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

On appeal, Appellant contends that the trial court erred when it denied his motion to suppress because (1) the law enforcement officers lacked probable cause to arrest him for public intoxication; therefore, his arrest was unlawful; and (2) the statements he made after his unlawful arrest should have been suppressed under Article 38.23 of the Texas Code of Criminal Procedure. Appellant further contends that his statements were used to establish his intent to assault or harass the officers and as the basis for the State's argument for the sentence that the trial court imposed. We affirm.

## I.  *Factual Background*

On June 20, 2020, Appellant had been drinking at a bar with his friends, and according to Appellant, with the intention to "find girls." Appellant remained at the bar for approximately four hours and left when it closed. That same night, Midland County Police Sergeants Steven Sanders and Michael Ball received a dispatch concerning a disturbance outside a local hotel bar involving a hispanic male and a white female.

Sergeant Sanders testified that, although he did not observe an active disturbance upon his arrival at the hotel's parking lot, he did observe a white female standing in the parking lot along with other people who were inside their vehicles.

2

Sergeant Ball then approached an occupied pickup to speak with the occupants and investigate the reported disturbance. At this time, Appellant was seated in the backseat of that pickup.

Sergeant Sanders testified that he observed that Appellant's speech was "very slurred" and that he "had mood swings." Initially Appellant "said everything was fine" but later he pointed his finger at Sergeant Ball, threatened to call others to come to the scene, became angry, and shouted at the officers. Sergeant Sanders's bodycam footage shows him walking over to two vehicles, a large black pickup and a white vehicle, where multiple parties are shouting or talking loudly. Three men, including Appellant, are seen in the pickup and Appellant appears to be leaning out of the back passenger's side window. After Sergeant Sanders checks on the men and women, Appellant responds with "yes, sir, all good, all good, all good." Sergeant Sanders walks by two women, and one of them asks the other if she is okay, to which the other responds "yes," but she appears exasperated or frustrated, shakes her head, and sighs. As is shown in the bodycam footage, Sergeant Sanders testified that after he walked around the pickup, Appellant's demeanor toward the officers changed— Appellant became angry, and he began interjecting and interrupting Sergeant Ball as he was investigating the reported disturbance.

During this interaction, the officers asked the individuals in the pickup for identification, to which Appellant told the officers that he had a "green card" and was from Mexico. The officer's bodycam footage shows that Appellant does not appear to provide the officers with any form of identification at that time. Sergeant Sanders testified that he then pulled Appellant out of the pickup because of safety concerns and Appellant's continuous interruptions to their efforts to investigate the reported disturbance. Appellant "pulled away" from the officers, and Sergeant Sanders handcuffed Appellant. Sergeant Sanders testified that it was at this moment that he decided to arrest Appellant for public intoxication.

3

Appellant then began yelling expletives and obscenities toward the officers, which continued throughout his interaction with them. Because of Appellant's aggressive behavior, Sergeant Sanders and Sergeant Ball decided to transfer the custody of Appellant to another group of officers who had arrived at the scene. While these officers were restraining Appellant in their patrol unit, Appellant spat in the face of one of the officers. The officers then transported Appellant to the City of Midland police station. Appellant later testified that he was intoxicated on the night of his arrest.

## II. *Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23. We give almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We also defer to the trial court's findings as to questions of fact and mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Wade v. State*, 422 S.W.3d 661, 666–67 (Tex. Crim. App. 2013); *Derichsweiler*, 348 S.W.3d at 913.

We review de novo the trial court's determination of pure questions of law, the application of the law to established facts, and the legal significance of those facts. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Wade*, 422 S.W.3d at 667; *Derichsweiler*, 348 S.W.3d at 913; *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004) (citing *United States v. Sharpe*, 470 U.S. 675, 682

4

(1985)).  We also review de novo mixed questions of law and fact that are not dependent upon credibility determinations.  *Brodnex*, 485 S.W.3d at 436; *Derichsweiler*, 348 S.W.3d at 913 (citing *Amador*, 221 S.W.3d at 673).

If the record is silent as to the reasons for the trial court's ruling, as in the case before us, we review the evidence in the light most favorable to the trial court's ruling, infer the necessary fact findings that support the trial court's ruling if the evidence supports those findings, and assume that the trial court made implicit findings to support its ruling.  *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000).  When considering a motion to suppress, the trial court is the exclusive trier of fact and judge of witness credibility.  *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).  As such, the trial court may choose to believe or to disbelieve all or any part of a witness's testimony.  *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990).  Therefore, we will sustain the trial court's ruling on a motion to suppress, regardless of whether the trial court granted or denied the motion, if it is supported by the record and if it is correct under any applicable theory of law.  *Lerma*, 543 S.W.3d at 190; *Ross*, 32 S.W.3d at 855–56.

### III.  *Analysis*

On appeal, Appellant asserts that the trial court abused its discretion when it denied his motion to suppress because (1) Appellant's arrest was unlawful in that the arresting officers lacked probable cause to arrest him for public intoxication; and (2) Appellant's statements that stemmed from his unlawful arrest should be suppressed under Article 38.23 of the Code of Criminal Procedure.  We disagree.

The Fourth Amendment guarantees protection against unreasonable searches and seizures.  U.S. CONST. amend. IV; *see Hubert v. State*, 312 S.W.3d 554, 560

5

(Tex. Crim. App. 2010). When a defendant seeks to suppress evidence based on an alleged Fourth Amendment violation, the defendant initially bears the burden of proof to show a constitutional violation. *State v. Martinez*, 569 S.W.3d 621, 623–24 (Tex. Crim. App. 2019). The defendant meets his initial burden by establishing that a search or seizure occurred without a warrant. *Id.* at 624. If the defendant meets this burden, the burden then shifts to the State to produce a warrant or show the reasonableness of the search or seizure. *Id.* Here, it is undisputed that Appellant was arrested without a warrant. Thus, the burden shifted to the State to show the reasonableness of seizing Appellant. *Id.*

"A police officer may arrest an individual without a warrant only if probable cause exists with respect to the individual in question, and the arrest falls within one of the exceptions set out in the Code of Criminal Procedure." *Id.* at 628 (citing *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005)); *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002); *State v. Whitman*, 606 S.W.3d 791, 798 (Tex. App.—Eastland 2020, pet. ref'd).

Probable cause for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient to inform a prudent officer to believe that the person arrested has committed or was in the process of committing an offense. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). The test for probable cause is an objective one, unrelated to the arresting officer's subjective beliefs, and requires a consideration of the totality of the circumstances that the arresting officer must consider. *Id.* Probable cause for a warrantless arrest may be based on an officer's prior knowledge and personal observations, and an officer may rely on reasonably trustworthy information provided by another person in making his or her overall probable cause determination. *Martinez*, 569 S.W.3d at 628 (citing *State v. Woodard*, 341 S.W.3d

404, 412 (Tex. Crim. App. 2011)).  A finding of probable cause requires more than bare suspicion.  *Id.* (citing *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). "An unarticulated 'hunch,' a suspicion, or the good faith of the arresting officer is insufficient to support probable cause to justify a warrantless arrest." *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005) (citing *McDougald v. State*, 547 S.W.2d 40, 42 (Tex. Crim. App. 1977)).

The Code of Criminal Procedure sets out statutory exceptions to the warrant requirement.  *See generally* TEX. CODE CRIM. PROC. ANN. art. 14.01 (West 2015) *et seq*.  Thus, if the trial court's ruling is correct on any theory of law that is applicable to the case and is reasonably supported by the record, we will uphold its decision.  *Ross*, 32 S.W.3d at 855–56; *see Gallups v. State*, 151 S.W.3d 196, 199 (Tex. Crim. App. 2004).

A person commits the offense of public intoxication if the person appears in a public place while intoxicated to the degree that the person may endanger himself or another person.  *See* PENAL § 49.02(a) (West 2011).  Generally, a public place is defined as "any place to which the public or a substantial group of the public has access."  *Id.* § 1.07(40) (West Supp. 2023).  A location may also be determined to be a "public place" based on the circumstances.  *Banda v. State*, 890 S.W.2d 42, 52 (Tex. Crim. App. 1994); *see York v. State,* 342 S.W.3d 528, 537 (Tex. Crim. App. 2011) (holding that a parking lot and sidewalk area outside of an Exxon convenience station was a public place); *see also Kindle v. State*, No. 05-01-01818-CR, 2003 WL 22707234, at *3 (Tex. App.—Dallas Nov. 18, 2003, no pet.) (mem. op., not designated for publication) (holding that a rational trier of fact could have found that a hotel parking lot was a public place beyond a reasonable doubt).  "As for the element of danger, it is sufficient that the person merely rendered himself or others subject to [a] potential danger." *Martinez*, 569 S.W.3d at 628 (citing *Dickey v. State*, 552 S.W.2d 467, 468 (Tex. Crim. App. 1977)).

7

The evidence shows that Appellant was in a public place at the time of his arrest. Appellant testified that on the night of his arrest he was in the backseat of a black pickup, which was parked in the hotel parking lot. Sergeant Sanders testified that he observed people standing in the hotel parking lot and several people inside other vehicles that were parked there. The public had access to—and were actively using—the hotel parking lot on the night of Appellant's arrest. Therefore, we conclude that Appellant was in a public place at the time of his arrest for public intoxication within the meaning of Section 49.02(a). *See* PENAL § 1.07(a)(40); *Martinez*, 569 S.W.3d at 628–29; *Kindle*, 2003 WL 22707234, at *3.

Appellant contends that the State evidence presented by the State is insufficient to show that the officers had probable cause to believe Appellant was intoxicated at the time of his arrest. To support his contention, Appellant argues that (1) the arresting officers had limited contact with Appellant before his arrest; (2) the State did not present any evidence regarding the arresting officers' knowledge of Appellant's alcohol consumption, bloodshot eyes, or difficulty standing; and (3) the bodycam footage does not show Appellant's slurred speech, contrary to Sergeant Sanders's testimony, thus the arresting officers did not have probable cause to believe Appellant was intoxicated. We disagree.

"Intoxicated" is defined as one (1) not having the normal use of one's mental or physical faculties by reason of the introduction of alcohol or other substances into one's body or (2) having an alcohol concentration of 0.08 or more. *See* PENAL § 49.01(2). Thus, for purposes of intoxication, a person is impaired if he has lost the normal use of his mental or physical faculties. *See id.* Intoxication may be proven by direct or circumstantial evidence, and to establish a person's guilt, the latter is as probative as the former. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

8

Texas courts have consistently held that a peace officer's testimony that a person is intoxicated can provide sufficient evidence to establish intoxication. *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979); *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *see also Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding that a peace officer's testimony that an individual is intoxicated is probative evidence of intoxication). Here, the State presented bodycam footage and the testimony of the arresting officer to show the state of Appellant's intoxication at the time of his arrest. Sergeant Sanders testified that he observed an open can of beer on the ground outside of the pickup that Appellant was sitting in. At the time of Appellant's arrest, Sergeant Sanders believed that Appellant was intoxicated because of (1) Appellant's slurred speech, (2) Appellant's "wild mood swings" and aggressive behavior toward the officers while they were conducting their investigation, and (3) Appellant's presence outside of a bar. The officers arrived at the scene around 2:16 a.m., minutes after the bar closed. Based on his training and nineteen years' experience as a police officer, Sergeant Sanders opined that individuals who are involved in disturbances at this particular location are usually intoxicated. The bodycam footage shows that Appellant was uncooperative and aggressive with the officers and their investigation, and he did not provide any form of identification to the officers upon their request. Additionally, Appellant testified that he had consumed approximately seven beers on the night of his arrest and admitted during the suppression hearing that he was intoxicated when arrested.

Appellant contends that the officers' knowledge of his alleged intoxication was limited, and, in support, argues that (1) there was no disturbance upon the officers' arrival at the scene; (2) notwithstanding Sergeant Sanders's testimony regarding Appellant's slurred speech, "it isn't observed on the video"; and (3) notwithstanding officers' "repeated assertions that [Appellant] was trying to pick

9

a fight with police," that fact is not "born [sic] by the evidence." Appellant requests that we review the videos and bodycam footage that were admitted at the suppression hearing and at trial. As we do in all cases, we have reviewed the videos and the bodycam footage, and we disagree with Appellant's assessment of this evidence.

On the bodycam footage, people are heard shouting or talking loudly as officers approached, Appellant is leaning out of the back passenger's side window of a pickup, and a woman seems exasperated. Appellant's speech is slurred and at times slow, and he repeats his words. Appellant's uncooperative behavior and aggression towards the officers is also apparent. We conclude that this visual evidence supports the trial court's decision to deny Appellant's motion to suppress.

At a suppression hearing, the trial court is the exclusive trier of fact and judge of the witnesses' credibility, and we review the evidence presented during the hearing in the light most favorable to the trial court's ruling. *See Garcia-Cantu*, 253 S.W.3d at 241; *Maxwell*, 73 S.W.3d at 281. When there are factual disputes regarding testimony or the contents of a recording, the trial court's findings of historical facts are afforded almost total deference. *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012) (citing *Tucker v. State*, 369 S.W.3d 179, 187 (Tex. Crim. App. 2012) (Alcala, J., concurring)). But when the evidence is conclusive, such as with indisputable visual evidence, then any trial court findings that are inconsistent with such conclusive evidence may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling. *Id.*; *see also Tucker*, 369 S.W.3d at 187 n.1. Thus, to the extent that there is any fact issue regarding the evidence depicted on the bodycam footage, we must defer to the trial court's determination as to whether the bodycam footage corroborated (1) the officers' testimony regarding the reported disturbance, (2) that Appellant's speech was slurred, and (3) that Appellant was aggressive toward the officers. *See Miller*, 393 S.W.3d at 263.

Along with the additional facts and circumstances articulated by the arresting officers, we conclude that there is sufficient evidence to support the trial court's determination that, at the time of Appellant's arrest, the officers had reason to believe that Appellant was intoxicated. *See Martinez*, 569 S.W.3d at 629 (holding that aggressive behavior, yelling, noncompliance with officer instructions, uncooperative behavior during a police investigation, an odor of alcohol, and slurred speech are all factors to be considered in concluding that an individual is intoxicated).

Appellant further contends that the arresting officers could not have concluded that Appellant was a danger to himself or others, as is required by Section 49.02(a), because Appellant was in the backseat of a pickup and "the [bodycam footage] does not show anything that appears like [Appellant] was going to fight with [the] officers." *See* PENAL § 49.02(a). Appellant argues that evidence of his intoxicated state alone does not show that he was a danger to himself or others. Despite Appellant's contentions, there is sufficient evidence to support the trial court's determination that the officers believed Appellant was a danger to himself or others at the time of his arrest.

Sergeant Sanders testified that there were people in the hotel parking lot when the officers responded to the disturbance call. At this time, Appellant was sitting in the backseat passenger side of a pickup with his arm hanging out of an open window, on the same side where two women were standing in the parking lot near the same pickup. Sergeant Sanders also testified that during the officers' investigation, Appellant exhibited "mood swings" and aggressive behavior toward the officers. Sergeant Sanders believed that Appellant was actively "picking a fight" with the officers, and, in his opinion, this behavior could cause Appellant to randomly "pick a fight" with another person—rendering both Appellant and others subject to potential danger. Moreover, in the bodycam footage, the officers told Appellant that

11

he was being arrested because he had "been drinking and . . . [was] involved in a disturbance," indicating that the officers believed that Appellant's behavior was related to the reported disturbance.

"[W]hen an officer is confronted with a person intoxicated in a public place, his determination as to possible danger that may befall the individual is not reviewed under the same standard used in a judicial determination of guilt." *Britton v. State*, 578 S.W.2d 685, 689 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g). A person's conduct that renders himself or others subject to a potential danger is sufficient to meet the "danger" element of a public intoxication offense. *Martinez*, 569 S.W.3d at 628.

Based on the officers' testimony and our review of the bodycam footage from Appellant's arrest, it is apparent that Appellant was aggressive and "picking a fight" with the officers prior to his arrest. The evidence and the testimony articulated by the arresting officer supports the trial court's determination that the officers had reason to believe that, due to Appellant's aggressive behavior, Appellant was a danger to himself or others at the time of arrest for public intoxication. *See Martinez*, 569 S.W.3d at 629; *see also Miller v. State*, No. 05-11-00282-CR, 2012 WL 2877633, at *4 (Tex. App.—Dallas July 16, 2012, no pet.) (mem. op., not designated for publication) ("The intoxicated individual need not commit any dangerous acts in the presence of an officer in order to pose a sufficient danger to himself and others. It is enough if the officer observes a degree of intoxication indicating the individual poses a *potential* danger to himself or others.") (citations omitted).

We conclude that the State met its burden to show that the warrant exception for an offense committed in presence or view of a peace officer applied here because there is sufficient evidence that Appellant committed the offense of public intoxication in the presence of law enforcement officers. *See* CRIM. PROC.

12

art. 14.01(b). Accordingly, the trial court did not abuse its discretion when it denied Appellant's motion to suppress. *See Martinez*, 569 S.W.3d at 630.

Next, Appellant contends that, because his post-arrest statements were not suppressed, as he claims they should have been, his statements were improperly used to (1) prove the elements of the offense for which he was convicted and (2) serve as the basis for the trial court's imposition of Appellant's sentence because they were used in violation of Article 38.23 of the Code of Criminal Procedure. *See* CRIM. PROC. art. 38.23 (West 2018).

As we have said, the trial court did not abuse its discretion when it denied Appellant's motion to suppress. Furthermore, Appellant pleaded guilty to the offense of harassment of a public servant and elected for the trial court to assess his punishment. A trial court has "wide discretion in deciding the admissibility of evidence presented at the punishment phase of trial." *Williams v. State*, 176 S.W.3d 476, 480 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Henderson v. State*, 29 S.W.3d 616, 626 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Moreover, the trial court when making a sentencing determination, is entitled to consider "any matter the court deems relevant to sentencing." CRIM. PROC. art. 37.07 § 3(a)(1) (West Supp. 2023). These matters may include evidence of the defendant's character, the circumstances of the offense for which he is being tried, and evidence pertaining to the defendant's personal responsibility and moral culpability for the charged offense. *Id.*; *see also Stavinoha v. State*, 808 S.W.2d 76, 79 (Tex. Crim. App. 1991) (per curiam). We conclude that the State did not improperly use either Appellant's post-arrest statements or the bodycam footage to prove the elements of the offense for which Appellant was convicted, nor was this evidence improperly used by the trial court as the basis in determining Appellant's sentence.

We have reviewed the record in the light most favorable to the trial court's ruling, and we conclude that the trial court did not abuse its discretion when it denied

Appellant's motion to suppress. *See Martinez*, 569 S.W.3d at 630. Accordingly, we overrule Appellant's issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

December 7, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.